UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Ft. Pierce Division

**Case Number:10-14067-CR-MARTINEZ-LYNCH**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

DANIEL SMITH,

      Defendant.

_____/

## ORDER ADOPTING MAGISTRATE JUDGE LYNCH'S REPORT AND RECOMMENDATION

THE MATTER was referred to the Honorable Frank J. Lynch, Jr., United States

Magistrate Judge for a Report and Recommendation on Defendant's Motion to Suppress Physical

and Testimonial Evidence (D.E. No. 18).  Defendant Daniel Smith ("Defendant") has been

charged in a two-count indictment with attempting to distribute child pornography and receiving

child pornography.  *See* (D.E. No. 11).  Defendant moved to suppress all physical and testimonial

evidence in this case because he argues that law enforcement made a warrantless entry into his

home, and this entry cannot be justified by exigent circumstances.  He also argues that any

consent given was not freely and voluntarily given and that any evidence seized must be

suppressed as fruit of the poisonous tree.  Magistrate Judge Lynch held an evidentiary hearing on

Defendant's motion on September 7, 2010 and has filed a Report and Recommendation (D.E. No.

31), recommending that Defendant's motion be denied.  The Court has reviewed the entire file

and record and has made a *de novo* review of the issues that the objections to the Magistrate

Judge Lynch's Report and Recommendation present.  After careful consideration and for the

reasons set forth below, this Court affirms and adopts Magistrate Judge Lynch's Report and Recommendation.

Defendant has filed a number of objections to Magistrate Judge Lynch's Report and Recommendation.  First, Defendant objects to Magistrate Judge Lynch's factual finding that "Detective Acosta associated . . . [the foul odor emanating from Defendant's residence] with possibly being associated with a decomposing body."  (D.E. No. 31 at 93).  Defendant argues that this misrepresents Detective Acosta's testimony.  At the suppression hearing, however, the following exchange took place between Plaintiff's counsel and Detective Acosta:

> Q.     At the time you smelled the odor, did you believe the possibility that it was either a decomposing body or someone unconscious that had soiled themselves based on what you smelled and knew at the time you were smelling it, not something you found out afterwards?
>
> A.     Right.  The possibility of it being a decomposing body is what crossed my mind, yes.

(D.E. No. 33, Tr. at 138).  Thus, the Court finds that Detective Acosta clearly testified that he associated the odor with possibly being associated with a decomposing body.  Thus, the Court affirms Magistrate Judge Lynch's factual finding and finds this objection is without merit.

Next, Defendant objects to Magistrate Judge Lynch's findings and conclusion that the officers were acting reasonably in entering Defendant's home to determine if he was in distress.  Specifically, Magistrate Judge Lynch found that "[b]ased upon the totality of the circumstances involving the officers knocking on the door, yelling through the windows, a foul smell coming from the residence, a moaning sound, and the specific statements made by [Defendant' s neighbor,] Ms. Fowler, this Court finds that the officers acted reasonably in entering the Defendant's residence to determine if he was in distress."  (D.E. No. 31 at ¶ 94).  Defendant

objects to this finding arguing that "Defendant had no obligation to answer the officers['] knocks or calls", that "[t]he foul smell was not identified as the odor of a decomposing body," that the "smell did not add to the agents' decision to make a warrantless entry into the apartment since . . . [Magistrate Judge Lynch] found that decision was made prior to entering the back porch area," that Agent Acosta did not testify that "he shared . . . [his] belief" that it smelled possibly like a decomposing body with the other officers, that the "decision to enter the residence was made independent of the 'moan'", and "Ms. Fowler's information supplied [the] officers with nothing more than speculation." (D.E. No. 32 at 1-2). This Court, however, finds that the totality of the circumstances support Magistrate Judge Lynch's finding that the entry into the home was reasonable.

The Fourth Amendment generally prohibits warrantless searches of a person's home. U.S. Const. amend. IV.  This prohibition, however is not absolute and there are a number of exceptions to the warrant requirement.  *United States v. Holloway*, 290 F. 3d 1331, 1334 (11th Cir. 2002).  "One such exception is that the police may enter a private premises and conduct a search if 'exigent circumstances' mandate immediate action."  *Id*.  "The most urgent emergency situation excusing police compliance with the warrant requirement is, of course the need to protect or preserve life."  *Id*. at 1335.  "[T]he Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid."  *Mincey v. Arizona*, 437 U.S. 385, 392 (1978).  Here, the Court finds that the totality of the circumstances demonstrates that the officers reasonably believed that Defendant was in need of immediate aid.

Special Agent Ray, Detective Sergeant Grimmich, and Detective Acosta all testified at

the suppression hearing that when they arrived at Defendant's residence all the windows were open but the blinds were closed.  (D.E. No. 33, Tr. at 19-20, 108).  There was also testimony that the windows all being open was unusual because it was an incredibly hot that day with temperatures around ninety or a hundred degrees.  *Id*. at 103, 109.  The officers knocked over and over again and later pounded on the door. *Id*. at 20, 107-108, 129-130.  The officers also called into different windows trying to get Defendant's attention, however, no one responded.  *Id*. at 20, 130.

Defendant's neighbor, Ms. Fowler, did respond to the knocking.  *Id*. at 21, 98-99  Ms. Fowler was sleeping in her bedroom at the rear of the duplex and was awakened by the knocking. *Id*. at 101  She told the officers that she was concerned that Defendant was not opening the door. *Id*. at 21. She told them she thought something was wrong and that it was unusual for him not to open the door if he was home.  *Id*. at 89, 100.  She also testified that Defendant's car was there so he had to be home.  *Id*. at 99.  In addition, Detective Sergeant Grimmich testified that Ms. Fowler "knew that . . . [Defendant] was feeling some sort of depression and wasn't acting right, and she was concerned that maybe he had harmed himself."  *Id*. at 108.

Detective Sergeant Grimmich and Detective Acosta told Special Agent Ray that they "detected a foul odor" that was "coming from inside of the residence." *Id*. at 23, 109, 131. Detective Grimmich then stated that he believed they should "do a welfare check for the occupant of the unit" that is going in and checking on the welfare of Defendant.  *Id*. at 23.

The officers then went around to the back of the house where there was a screen porch enclosure and sliding glass door. *Id*. The officers again tried calling out to Defendant and knocking on the screen enclosure. *Id*.  The officers then went onto the porch and as they

-4-

approached the sliding glass doors, Special Agent Ray testified that they heard a moan. *Id.* at 23-24, 75. Detective Sergeant Grimmich stated that he heard the moan as Detective Acosta was opening the sliding glass door. *Id.* at 110.  The officers then announced their presence and entered the house. *Id.* at 24.

The Court agrees that under the totality of the circumstances it was reasonable for the officers to believe that Defendant was in danger.  Defendant certainly did not have a duty to open the door for police.  However, the police knocked on his door and then pounded on his door and they called into his open windows and received no response.  The officers were loud enough that they woke up Defendant's neighbor who was sleeping in the back of her duplex.  At least two of the officers smelled a foul odor emanating from inside Defendant's unit.  Whether the concern was voiced by one of the officers that this odor was similar to a decomposing body is not significant.  Moreover, Ms. Fowler, Defendant's neighbor testified that she was concerned and indicated to the officers that it was unusual for Defendant not to answer the door if he was home.  She also testified that he was home because his car was there.  She also told one officer that she thought Defendant was depressed.  Although Ms. Fowler's observations may be speculation, her observations as a neighbor are relevant in a consideration of the totality of the circumstances in this case.[1]  Thus, the Court affirms Magistrate Judge Lynch's finding that the officers were justified in entering Defendant's residence without a warrant and rejects Defendant's objection as

---

[1]The Court does not discuss when and where the moan was heard because with or without the moan, the Court finds that the totality of the circumstances justified the officers' warrantless entrance into Defendant's residence.

-5-

to this issue.[2]

Defendant also objects to Magistrate Judge Lynch's finding that the officers did not apply coercive techniques or threats and objects to Magistrate Judge Lynch's factual finding and legal conclusion that he freely and voluntarily agreed to speak to the officers.[3]  Specifically, Defendant argues that the officers entered his home without a warrant, woke him up from a deep sleep, told him they wanted to speak to him, lied to him about their reasons for being at his house, did not tell him he could refuse to speak to them,[4] and did not tell him he could ask them to leave his

---

[2]Defendant also objects to "any analogy between the warrantless entry into Defendant's residence and a protective sweep." (D.E. No. 32 at 2).  The Court finds nothing inappropriate in this analogy discussed in Magistrate Judge Lynch's Report.  *See* (D.E. No. 31 at ¶¶ 96-97).
    In addition, Defendant "objects to the Magistrate's conclusion that entry into the residence was not to obtain consent to search for evidence of a crime."  For the reasons discussed above, the Court affirms Magistrate Judge Lynch's finding that although the officers went to Defendant's home for a "knock and talk" to attempt to gain more information about the tip linking him to the viewing and transmission of child pornography, the officers actually entered the residence to check on the welfare of Defendant.

[3]Defendant also objects to Magistrate Judge Lynch's finding that the officers told Defendant that they "wished to speak to him." (D.E. No. 31 at 95).  Defendant argues that the testimony from Special Agent Ray and Detective Sergeant Grimmich was actually that they "wanted" to speak with him.  The Court agrees that Special Agent Ray stated "wanted" rather than "wished", *see* (D.E. No. 33, Tr. at 27, 79), however, he also clarified that he "asked" to speak to Defendant.  *Id*. at 87.  Detective Sergeant Grimmich stated that he said "Mr. Smith, police department, we'd like to talk to you." *Id*.  at 112.  Either way, the Court does not find this distinction significant.

[4]Defendant also states as an objection that he "disagrees that he asserted he has a constitutional right to be advised by law enforcement that he does not have to speak to them. Defendant never asserted such a right exists, rather Defendant correctly argued that whether Defendant was informed of this right is a factor the Court must consider under the totality of the circumstances used to determine voluntariness." (D.E. No. 32 at 3).  The Court agrees that this is a factor and notes that Magistrate Judge Lynch also acknowledged that this is a factor and did consider it.  *See* (D.E. No. 31 at ¶107).

residence.[5]   The Court, however, agrees with Magistrate Judge Lynch's finding that the officers

were not coercive, that they did not threaten Defendant, and that Defendant freely and voluntarily

agreed to speak to the officers in this case.

Voluntariness is a question of fact determined by examining the totality of the

circumstances.  *United States v. Bentley*, 151 Fed. Appx. 824, 827 (11th Cir. 2005).  "Relevant

factors in determining voluntariness, none of which is dispositive, include

> voluntariness of the defendant's custodial status, the presence of coercive police
> procedure, the extent and level of the defendant's cooperation with police, the
> defendant's awareness of his right to refuse to consent to the search, the
> defendant's education and intelligence, and, significantly, the defendant's belief
> that no incriminating evidence will be found.

*United States v. Chemaly*, 741 F.2d 1346, 1352 (11th Cir. 1984) (quoting *United States v.*

*Phillips*, 664 F. 2d 971, 1023-24 (5th Cir. 1981)).  Here, the Court finds in considering these

factors and the totality of the circumstances that the officers were not coercive and Defendant's

consent was freely and voluntarily given.

First, Defendant was not in custody.  There is no evidence that Defendant was restrained

or that he would have felt that he was not free to leave.  (D.E. No. 33, Tr. at 45).  The officers

asked if they could speak to him, he agreed, and then the officers asked where he preferred to

speak to them.  *Id*. at 27.  At his request, the officers went outside with him to talk to him.  *Id*.

---

[5]Defendant also argues there is no evidence as to the extent of Defendant's education and
objects to Magistrate Judge Lynch's finding that he appeared to be "educated and intelligent."
(D.E. No. 31 at ¶ 107).  This finding, however, was made based on Magistrate Judge Lynch's
observations after listening to Government's exhibit 10, which contained recorded conversations
with the Defendant.  Magistrate Judge Lynch stated that these conversations "reflect an
individual who appears to be intelligent, educated and well aware of his surrounds."  Thus, there
was evidence to support Magistrate Judge Lynch's finding.  In addition, as discussed below, the
Court also finds other evidence in the record supports Magistrate Judge Lynch's conclusion that
Defendant appeared to be educated and intelligent.

The officers only reentered the house when the Defendant volunteered to go and get a laptop for them. *Id*. at 39. Defendant entered the house first and told the officers he would get them the laptop and continued speaking to the officers causing them to follow him in to continue the conversation. *Id*.[6] At some point, everyone returned outside because Defendant wanted to have a cigarette. *Id*. at 47.

There is also no evidence of coercive police procedure. No one raised their voices at Defendant or put their faces in his face to intimidate him. *Id*. at 52, 55, 133. The Court agrees that Special Agent Ray testified that he told Defendant "that the government had an aggressive monitoring program and the child pornography had been transmitted from his residence." *Id*. at 32. The government, however, had not detected child pornography being transmitted from Defendant's residence. *Id*. This was a lie. The Eleventh Circuit has rejected a "*per se* rule that statements obtained by police deception must be suppressed." *United States v. Brenton-Farley*, 607 F.3d 1294, 1328 (11th Cir. 2010). Moreover, "[m]isleading a suspect about the existence or strength of evidence against him does not by itself make a statement involuntary." *Id*. "Even if some police tricks may be 'objectionable as a matter of ethics,' they are not relevant to the constitutional validity of a waiver unless they interfere with the defendant's 'ability to understand the nature of his rights and the consequences of abandoning them.'" *Id*. at 1330 (quoting *Moran*

---

[6]Defendant also objects arguing that the fact that he did not prevent the officers from reentering does not mean he gave consent for reentry. Defendant argues that the circumstances show that Defendant was simply "submitting to the authority of the officers to re-enter the residence at will and without permission." (D.E. No. 32 at 3). This Court disagrees and finds for all of the reasons discussed below that the totality of the circumstances show that Defendant consented to the officers reentering his residence. The fact that Defendant continued speaking to the officers as he walked away to get the laptop indicates that Defendant wanted them to follow him.

*v. Burbine*, 475 U.S. 312, 423-24 (1986)).  Here, the Court agrees with Magistrate Judge Lynch's conclusion that "based on the totality of the circumstances," Special Agent Ray's deception "did not affect the Defendant's ability to understand his constitutional rights and make a knowing and voluntary waiver of those rights in agreeing to speak with the officers. . . ."  (D.E. No. 31 at ¶100).  Specifically, as discussed below, Defendant denied that there was any child pornography on his computers.  (D.E. No. 33, Tr. at 33).  Moreover, it defies logic that Defendant would not understand the consequences of giving the officers direct evidence of his crimes, i.e. his computers and the files contained within them, in addition to the made-up "detection" of the transmission of child pornography from his residence.

In addition, Defendant was extremely cooperative with the officers.  He agreed to speak with them.  *Id*. at 27, 132-133.  He told Special Agent Ray that they were welcome to look at his broken computer that he had in November 2009.  *Id*. at 38, 114.  He voluntarily went and got the computer for the officers.  *Id*. at 39-40, 114.  Special Agent Ray asked if he could look at his other laptop, and Defendant agreed.  *Id*. at 40, 115.  Defendant eventually consented to a search of his entire residence and signed a consent form.  *Id*. at 48, 116, 117.  Defendant even gave the officers a password which allowed them to log on to Defendant's wireless network.  *Id*. at 49.  Defendant also consented to the officers taking certain items to be searched.  Defendant then voluntarily agreed to go back to the police department with the officers.  *Id*. at 50, 117-118.

With regard to the next factor, the Court agrees as Magistrate Judge Lynch found that Defendant was not specifically advised that he did not have to speak with the officers.  He was only advised of this fact after Special Agent Ray saw the working laptop in the living room that was in the process of uploading child pornography.  *Id*. at 92.

Next, the Court considers Defendant's education and intelligence.  The officers testified that Defendant was lucid and appropriately responsive to his questions and comments.  *Id*. at 34-35, 114.  Defendant also immediately answered the officer's questions.  *Id*. at 35, 114.  Special Agent Ray testified that Defendant told him he was "particularly computer knowledgeable."  *Id*. at 33.  Detective Sergeant Grimmich testified that Defendant "was in his element talking about computers" and that "[s]ome of the conversation him and Agent Ray were having was well over my head as far as computers were concerned."  *Id*. at 118.  Detective Sergeant Grimmich was "impressed" with Defendant's knowledge.  *Id*.  Thus, it appeared that Defendant was somewhat educated and intelligent.

Finally, the Court considers Defendant's belief that no incriminating evidence would be found.  It is not completely clear what Defendant believed.  However, the evidence indicates that he freely cooperated with the officers and gave them his old laptop and allowed them to look at his other laptop.  Moreover, he stated that he had not seen any child pornography on his computer.  *Id*. at 33.  Thus, such confidence indicates that he believed no incriminating evidence would be found.

Based on a totality of the circumstances, the Court agrees that Defendant was not coerced into speaking to the officers and that his consent was freely and voluntarily given.  Defendant was clearly not in custody.  Although Special Agent Ray told a lie regarding the evidence they had against him, Defendant was not coerced into speaking with the officers.  Defendant also demonstrated a certain degree of education and intelligence in speaking with the officers.  He freely cooperated with the officers.  He volunteered information, gave the officers access to his computers and other equipment, and was not particularly concerned that any incriminating

evidence would be found on these devices.  Although the officers never advised Defendant that he did not have to speak with them, this is only one factor the Court considers.  Here, the factors and the totality of the circumstances support Magistrate Judge Lynch's conclusions and a finding that Defendant was not coerced and that his consent was both free and voluntary.[7]  Therefore, it is hereby:

       **ADJUDGED** that United States Magistrate Judge Lynch's Report and Recommendation **(D.E. No. 31)** is **AFFIRMED** and **ADOPTED**.  Accordingly, it is

       **ADJUDGED** that

       Defendant's Motion to Suppress Physical and Testimonial Evidence (D.E. No. 18) is **DENIED**.

       DONE AND ORDERED in Chambers at Miami, Florida, this 30th day of September, 2010.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Lynch
All Counsel of Record

---

[7]Defendant also raises objections with regard to the dissipation of the taint of the alleged illegal initial entry.  Because this Court has found that the initial entry was not illegal, this Court does not find it necessary to address these objections.

-11-